UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Engineering & Construction Innovations, Inc.,

        Plaintiff,

v.

Bradshaw Construction Corporation and Travelers Casualty & Surety Company of America,

        Defendants,

and

Bradshaw Construction Corporation,

        Counter Claimant,

v.

Engineering & Construction Innovations, Inc.; Fidelity and Deposit Company of Maryland; and Zurich American Insurance Company,

        Counter Defendants.

File No. 20-cv-808 (ECT/SGE)

**OPINION AND ORDER**

---

Ernest F. Peake, Patrick J. Lindmark, Paul Shapiro, Stacey L. Drentlaw, Taft Stettinius & Hollister LLP, Minneapolis, MN, for Plaintiff and Counter Defendant Engineering & Construction Innovations, Inc., Counter Defendant Fidelity and Deposit Company of Maryland, and Counter Defendant Zurich American Insurance Company.

Dean B. Thomson, Julia J. Douglass, Fabyanske, Westra, Hart & Thomson, PA, Minneapolis, MN, Rachael L. Russo, Thomas Louis Rosenberg, Roetzel & Andress, LPA, Columbus, OH, for Defendant and Counter Claimant Bradshaw Construction Corporation and Defendant Travelers Casualty & Surety Company of America.

---

After a bench trial, Engineering & Construction Innovations, Inc. ("ECI") prevailed on its contract and indemnity claims, and Bradshaw Construction Corporation ("Bradshaw") prevailed on its prompt-payment claim under Minnesota Statutes section 337.10. Familiarity with the trial decision is presumed here. *See Eng'g & Constr. Innovations, Inc. v. Bradshaw Constr. Corp.*, No. 20-cv-808 (ECT/TNL), 2024 WL 5040395 (D. Minn. Dec. 9, 2024).

Two motions require adjudication. (1) ECI seeks all the attorneys' fees and costs it incurred in this case on the ground that they were necessary to establish its right to indemnification from Bradshaw. (2) Bradshaw seeks attorneys' fees and costs arising from its prompt-payment claim. ECI's motion will be denied. The contract does not authorize ECI to recover the fees and costs it seeks. Bradshaw's motion will be granted, though in an amount slightly less than requested.

I

Several findings and conclusions prompted, and are relevant to, ECI's motion. "By letter dated December 21, 2021, the City assessed damages against ECI in the amount of $2,902,411, including $2,815,000 in liquidated damages . . . ." *Eng'g & Constr. Innovations*, 2024 WL 5040395, at *33 ¶ 277. "The City's liquidated damages assessment of $2,815,000 is based on a 563-day delay at the Prime Contract's $5,000 per day rate as set forth in section 18.09 of the Supplemental Conditions." *Id.* at *33 ¶ 278 (first citing Joint Exhibit 4 § 18.09; and then citing Plaintiff Exhibit 761). Subparagraph 6(v) of the Subcontract required Bradshaw to indemnify ECI from the City's liquidated-

2

damages assessment because "ECI proved that liquidated damages were caused by Bradshaw's unsuccessful microtunneling drive." *Id.* at *52 ¶ 38. And because the Subcontract's indemnification provision included a fee-shifting clause, I held, quoting from the indemnification provision, that "ECI is entitled to recover . . . expenses, including costs, expert fees, and reasonable attorney's fees arising or in any way resulting from those liquidated damages." *Id.*

The parties disagree regarding whether ECI should be awarded its fees and costs incurred in this case. ECI points out that showing Bradshaw's contractual liability in this suit was necessary to trigger Bradshaw's obligation to indemnify ECI—*i.e.*, that Bradshaw's contractual breaches caused ECI to incur liquidated-damages liability to the City. ECI argues that the Subcontract's indemnification provision allows it to recover fees and costs it incurred to establish its right to indemnification from Bradshaw (not just whatever fees or costs it may have incurred in defending itself against the City's liquidated-damages claim). ECI therefore seeks essentially all the attorneys' fees and costs it incurred in prosecuting this case, or $3,269,960.35. Bradshaw does not disagree that ECI had to prevail on its breach-of-contract claim to establish Bradshaw's indemnification obligation. In Bradshaw's view, however, the Subcontract's indemnification provision authorized ECI to recover only fees and costs ECI might have incurred in defending itself against the City's liquidated-damages claim (not the fees and costs it incurred in establishing its right to indemnification from Bradshaw). Alternatively, Bradshaw argues that ECI's requested fees and costs are unreasonable.

The parties agree that Minnesota law applies to answer whether the Subcontract's indemnification provision authorizes ECI to seek the attorneys' fees and costs it incurred in establishing Bradshaw's contractual liability in this case. Several general contract rules guide the analysis. Under Minnesota law, "the primary goal of contract interpretation is to determine and enforce the intent of the parties." *Motorsports Racing Plus, Inc. v. Arctic Cat Sales, Inc.*, 666 N.W.2d 320, 323 (Minn. 2003). Contract provisions are not to be read in isolation, but instead considering their surrounding context. *RAM Mut. Ins. Co. v. Rohde*, 820 N.W.2d 1, 14 (Minn. 2012). The Minnesota Supreme Court has several times criticized courts and parties for failing to heed context clues. *See, e.g.*, *Gill v. Gill*, 919 N.W.2d 297, 313 (Minn. 2018) (Anderson, J., dissenting) ("The court's focus on scattered references in the purchase agreement . . . is far too simplistic and inconsistent with our historic approach to contract construction. . . . Words and phrases cannot be read 'out of context with the entire agreement.'") (quoting *Metro Off. Parks Co. v. Control Data Corp.*, 205 N.W.2d 121, 124 (Minn. 1973)); *Savela v. City of Duluth*, 806 N.W.2d 793, 801 (Minn. 2011) ("The intent of the parties is not ascertained by a process of dissection in which words or phrases are isolated from their context, but rather from a process of synthesis in which the words and phrases are given a meaning in accordance with the obvious purpose of the contract as a whole." (quotation omitted)); *Sayer v. Minn. Dep't of Transp.*, 790 N.W.2d 151, 158 (Minn. 2010) (rejecting party's focus on one sentence "[r]ead in isolation," and concluding that reading the sentence "in context and in conjunction with the [contract] as a whole," the meaning was evident); *accord Owners Ins. Co. v. European Auto Works, Inc.*, 695 F.3d 814, 823 (8th

Cir. 2012) (Colloton, J., dissenting) ("The italicized subsection (b), however, must be viewed in context. *Minnesota law is firm on this point.* . . . The Minnesota courts will not consider the meaning of subsection (b) in isolation, but in the light of surrounding provisions." (emphasis added)). "'Because of the presumption that the parties intended the language used to have effect,' Minnesota courts 'will attempt to avoid an interpretation of the contract that would render a provision meaningless.'" *Qwinstar Corp. v. Anthony*, 882 F.3d 748, 755 (8th Cir. 2018) (quoting *Chergosky v. Crosstown Bell, Inc.*, 463 N.W.2d 522, 526 (Minn. 1990)). When contract language is unambiguous, the "language must be given its plain and ordinary meaning." *Minneapolis Pub. Hous. Auth. v. Lor*, 591 N.W.2d 700, 704 (Minn. 1999) (footnotes omitted). A contract is ambiguous only when its terms "are susceptible to more than one reasonable interpretation." *Staffing Specifix, Inc. v. TempWorks Mgmt. Servs., Inc.*, 913 N.W.2d 687, 692 (Minn. 2018). "The determination of whether a contract is ambiguous is a question of law, but the interpretation of an ambiguous contract is a question of fact . . . ." *Denelsbeck v. Wells Fargo & Co.*, 666 N.W.2d 339, 346 (Minn. 2003) (citations omitted).

In addition to these general rules, the Minnesota Court of Appeals has applied a rule specific to contractual indemnification provisions: "When insurance is not involved, an indemnitee is not entitled to attorney fees and costs incurred to establish the right to indemnification, unless the parties' agreement expressly provides otherwise." *Diebold, Inc. v. Roadway Express, Inc.*, 538 N.W.2d 150, 152 (Minn. Ct. App. 1995). To justify

its adoption of this rule, the Court of Appeals quoted an explanation given by the Second

Circuit:

> Indemnity obligations * * * require the indemnitor to hold the indemnitee harmless from costs in connection with a particular class of claims. Legal fees and expenses incurred in defending an indemnified claim are one such cost and thus fall squarely within the obligation to indemnify. Consequently, attorney's fees incurred in defending against liability claims are included as part of the indemnity obligation implied by law and reimbursement of such fees is presumed to have been the intent of the draftsmen unless the agreement explicitly states otherwise. * * * Such reasoning does not apply to fees and expenses incurred in establishing the existence of an obligation to indemnify, since such expenses are not by their nature a part of the claims indemnified against. Rather, they are costs incurred in suing for a breach of contract, to-wit, the failure to indemnify.

*Seifert v. Regents of the Univ. of Minn.*, 505 N.W.2d 83, 86 (Minn. Ct. App. 1993)

(alterations in original) (quoting *Peter Fabrics, Inc. v. S.S. Hermes*, 765 F.2d 306, 316

(2d Cir. 1985)), *review denied* (Minn. Oct. 28, 1993); *see Sheely v. Mower Cnty. Farmers*

*Mut. Ins. Co.*, No. C0-96-434, 1996 WL 509759, at *3 (Minn. Ct. App. Sept. 4, 1996)

("[E]ven where an indemnitee is entitled to attorney fees incurred in defending an

indemnified claim, he is not entitled to fees and costs for prosecuting his right to

indemnification unless there is an agreement with the indemnitor that expressly so

provides.").

Courts' applications of this rule are instructive. In *Seifert*, for example, the

contractor (NewMech) agreed to indemnify the project owner (the Regents) "against all

claims, damages, losses and expenses including attorney's fees arising out of or resulting

from the performance, or lack of performance[,] of the [construction work]." 505

N.W.2d at 85. The court determined that this language did not "on its face entitle the Regents to attorney fees and costs incurred in prosecuting its right to indemnification from NewMech." *Id.* at 87. Similarly, in *BAE Systems Land & Armaments, L.P. v. Ibis Tek, LLC*, Judge Nelson found that the contract lacked language expressly authorizing attorneys' fees incurred pursuing indemnification, meaning those fees could not be recovered. 192 F. Supp. 3d 978, 988 (D. Minn. 2016). The relevant indemnity provision provided only that "[Ibis] further agrees to indemnify and hold [BAE] harmless to the full extent of any loss, damage, or expense, including, but not limited to, any price reduction in [BAE's] prime contract with the U.S. Government." *Id.* at 982. In contrast, the parties agreed on a separate contractual provision—inapplicable to their pricing dispute—that explicitly required Ibis to indemnify "all costs, expenses and legal fees and disbursements paid or incurred in connection with such claims and all legal fees and disbursements paid or incurred to enforce the provisions of this paragraph." *Id.* That provision, in Judge Nelson's view, showed that "the parties clearly understood how to create a right to attorneys' fees" but "chose not to articulate that right in the [relevant clause]." *Id.* at 988. Other cases show how contracting parties might draft an indemnification clause to shift attorneys' fees and costs with respect to suits brought to enforce an indemnification right. For example, in *Van Vickle v. C.W. Scheurer & Sons, Inc.*, the contract required the subcontractor "to indemnify and save harmless the Contractor [for] claims for which the Contractor may or may be claimed to be, liable[,] and *legal fees and disbursements paid or incurred to enforce the provisions of this paragraph*." 556 N.W.2d 238, 240 (Minn. Ct. App. 1996) (emphasis added); *see Bluffs on Sans Pierre Townhomes & Villas Ass'n v.*

7

*Wooddale Builders, Inc.*, No. A18-0404, 2018 WL 4558317, at *5 (Minn. Ct. App. Sept. 24, 2018) (discussing *Van Vickle*).

It is true that the Minnesota Supreme Court has not adopted this indemnification-specific rule, but several reasons lead to me conclude it would. *See Cont'l Cas. Co. v. Advance Terrazzo & Tile Co.*, 462 F.3d 1002, 1007 (8th Cir. 2006) ("When a state's highest court has not decided an issue, it is up to this court to predict how the state's highest court would resolve that issue."). (1) The Minnesota Court of Appeals has been consistent in its application of the rule. The parties have not cited, and I have not found, a Court of Appeals case that refuses to apply the rule or that questions the rule's wisdom. Nor have I found a case from the Eighth Circuit or this District predicting the Minnesota Supreme Court would not adopt the rule or criticizing the rule in some way. (2) When the decisions of a state's intermediate appellate court present "the best evidence of what state law is," those decisions constitute persuasive authority that should ordinarily be followed. *Id.* (quotation omitted). It is true that following even a settled line of Minnesota Court of Appeals cases doesn't guarantee getting it right. *See Savanna Grove Coach Homeowners' Ass'n v. Auto-Owners Ins. Co.*, No. 19-cv-1513 (ECT/TNL), 2020 WL 3397312, at *3 (D. Minn. June 19, 2020) (noting the Minnesota Supreme Court's recent rejection of an established "line of Minnesota Court of Appeals cases holding that the Uniform Arbitration Act governs appraisal awards"). But absent some reasonably clear indication of an issue or problem, the surer approach is to follow that court's lead. (3) *Seifert*, the case in which the Minnesota Court of Appeals adopted the rule, was decided roughly 32 years ago, in 1993. 505 N.W.2d at 83. The case's

longevity, and the Minnesota Supreme Court's denial of a petition for review in the case, adds somewhat to the case's persuasive weight. (4) Considered against the justifications the Second Circuit described in *Peter Fabrics*, 765 F.2d at 316, the rule represents a context-specific application of the general "American rule prevent[ing] a party from shifting its attorney fees to its adversary without a specific contract or statutory authorization," *Kallok v. Medtronic, Inc.*, 573 N.W.2d 356, 363 (Minn. 1998). The indemnification-specific rule is thus consistent with Minnesota Supreme Court cases applying the more general rule. (5) This is the majority rule. *See Nova Rsch., Inc. v. Penske Truck Leasing Co.*, 952 A.2d 275, 287–88 (Md. 2008) (collecting cases); *Pennant Serv. Co. v. True Oil Co.*, 249 P.3d 698, 710–11 (Wyo. 2011) ("The majority rule is that a party is not entitled to its fees and costs incurred in establishing its right to indemnity . . . ."); *Nusbaum v. City of Kansas City*, 100 S.W.3d 101, 109 n.10 (Mo. 2003) (per curiam).

Here, the Subcontract's indemnification provision does not expressly provide that ECI is entitled to attorneys' fees and costs incurred to establish its right to indemnification from Bradshaw, meaning ECI cannot recover the fees and costs it incurred in establishing its right to indemnification from Bradshaw. In relevant part, the provision reads as follows:

> 6. **INDEMNIFICATION.** Subcontractor will defend, indemnify and save harmless Contractor and Owner, and their respective officers, directors and agents, to the fullest extent of the law, from any and all claims, damages, and expenses, in whole or in part, including costs, expert fees, and reasonable attorney's fees, bodily

> injury or property damage, arising or in any way
> resulting from:
>
> *        *        *
>
> v. _Liquidated Damage_. Any other liability to Owner
>    or Contractor that Subcontractor caused including
>    Liquidated Damages . . . .

Joint Exhibit 7 at 5. The provision contains no express term entitling ECI to fees and costs for prosecuting its right to indemnification against Bradshaw. And the provision seems indistinguishable from the indemnification provisions the Minnesota Court of Appeals and other courts have held do not shift fees and costs incurred to establish a right to indemnification. *See Seifert*, 505 N.W.2d at 85, 87; *BAE Sys. Land & Armament*, 192 F. Supp. 3d at 982, 988–90; *Peter Fabrics*, 765 F.2d at 313, 315–16. Though the provision here includes broad language, courts have been clear that more is required. The "to the fullest extent of the law" phrase, for example, appeared in the indemnity agreement at issue in *Seifert*, 505 N.W.2d at 85, but that broad language alone was not enough, *id.* at 87.[1] The provision is most naturally understood as referring to fees and costs ECI might have incurred in defending against the City's liquidated-damages claim. The indemnification-triggering actions described in subparts (i) through (vi) do not include just any breach by Bradshaw; they are limited to specific actions, and a breach

---

[1]    Nor was similarly broad language enough in *BAE Sys. Land & Armaments*, 192 F. Supp. 3d at 982 ("[Ibis] further agrees to indemnify and hold [BAE] harmless to the full extent of any loss, damage, or expense, including, but not limited to, any price reduction in [BAE's] prime contract with the U.S. Government . . . ." (alterations in original)), or *Wooddale Builders*, 2018 WL 4558317, at *1 ("Each party shall hold harmless, indemnify and defend the other Party from and against all claims and liabilities arising out of the acts or omissions of such Party.").

must result in "third party claims" to trigger ECI's indemnification rights.  Joint Exhibit 7 at 5 ¶ 6.  The "*Liquidated Damage*" subpart also confirms this point.  *See id.*  If the Subcontract or another contract document contained a provision that gave ECI a right to seek liquidated damages directly from Bradshaw, that provision has not been identified, and it was not an issue at trial.

Construing the Subcontract's indemnification provision to enable ECI to recover the attorneys' fees and costs it incurred in pursuing this case would be inconsistent with a context clue found elsewhere in the Subcontract.  As Bradshaw pointed out, ECF No. 560 at 5, 15, the Subcontract includes a term requiring that "each Party shall bear its own costs, expenses and attorney's fees," Joint Exhibit 7 at 6 ¶ 10.  Though this clause appears in a paragraph whose larger meaning is not obvious, Bradshaw took the position that this specific clause means what it says, ECF No. 560 at 5, 15, and ECI did not disagree or suggest the clause should be understood differently, *see generally* ECF No. 564; *see also Fiecke-Stifter v. MidCountry Bank*, No. 22-cv-3056 (ECT/DTS), 2023 WL 5844758, at *8 n.4 (D. Minn Sept. 11, 2023) (noting that a failure to respond to opposing party's contention amounts to a waiver).  Against that background, it is difficult to understand how interpreting the Subcontract's indemnification provision to enable ECI to recover all its fees and costs in this case would not contradict—or perhaps read out of the Subcontract—the no-fee-shifting provision.  That, in turn, would contradict basic Minnesota contract-construction canons.  *Gill*, 919 N.W.2d at 313 (Anderson, J., dissenting) ("Words and phrases cannot be read out of context with the entire agreement." (quotation omitted)).

11

ECI advances several arguments to show that it is entitled to the fees and costs it incurred in establishing its right to indemnification from Bradshaw, but these arguments are not persuasive. ECI argues that this issue was already resolved in the Findings of Fact and Conclusions of Law. *See* ECF No. 564 at 2–3 (explaining the argument). This is not correct. The relevant findings and conclusions quoted the indemnification provision. *Compare Eng'g & Constr. Innovations*, 2024 WL 5040395, at *8 ¶ 63, *52 ¶ 38, *57 ¶ 3, *with* Joint Exhibit 7 at 5 ¶ 6. The issue of what fees and costs "ar[ose] or in any way result[ed] from," Joint Exhibit 7 at 5 ¶ 6, the liquidated damages assessed against ECI was not resolved. Nor could it have been. Neither ECI nor Bradshaw teed up the central issue—whether the Subcontract's indemnification provision expressly authorized ECI to recover its fees and costs incurred to establish its indemnification right against Bradshaw—until ECI filed this motion.

ECI argues that *Seifert* is distinguishable—and that "Bradshaw's interpretation of *Seifert* and the Subcontract are flat-out wrong"—because *Seifert* precluded a party from recovering fees incurred in an enforcement action whereas ECI is trying to recover fees incurred establishing entitlement to indemnification from Bradshaw for the City's liquidated-damages claim. ECF No. 564 at 4–6. I don't understand the difference. Both *Seifert* and this case involve a third-party claim that is indemnified—the personal injury claim in *Seifert* and the City's liquidated-damages claim here—and a first-party claim to establish a right to indemnification that is not. In *Seifert*, the court held that NewMech was required to indemnify the Regents for fees and costs incurred defending Seifert's personal injury claim, but that NewMech was not required to indemnify the Regents for

12

fees and costs incurred in enforcing NewMech's underlying indemnification obligation. 505 N.W.2d at 85–87. We have that same situation here. ECI brought this case in part to enforce Bradshaw's indemnification obligation arising from the City's assessment of liquidated damages against ECI. To support its argument that *Seifert* is distinguishable, ECI describes the fees and costs it incurred in defending the City's liquidated-damages claim as "inseparable" from the fees and costs it incurred in pursuing this case. ECF No. 564 at 2. Not so. Perhaps ECI incurred comparatively little fees and costs in defending the City's claim. But those fees and costs would be easy to separate from ECI's fees and expenses for this case. Apart from *Seifert*, ECI attempts to distinguish *BAE Sys. Land & Armaments*, *Diebold*, and *Bluffs on Sans Pierre Townhomes & Villas Ass'n*, on the ground that the "cases involve[] indemnity provisions *silent* about attorney's fees." ECF No. 564 at 8. Okay, but the silence these cases reference isn't the absence of an indemnification right or the indemnitee's ability to recover fees and costs incurred in defending a third-party claim; it's the absence of an express provision that an indemnitee is entitled to attorneys' fees and costs incurred to establish the right to indemnification. *BAE Sys. Land & Armaments*, 192 F. Supp. 3d at 982, 986–90; *Diebold*, 538 N.W.2d at 152; *Bluffs on Sans Pierre Townhomes & Villas Ass'n*, 2018 WL 4558317, at *1, *4–5. We have that same silence here.

ECI cites three cases in which courts applied Minnesota law and awarded attorneys' fees and costs indemnitees incurred in enforcing their indemnification rights. *See* ECF No. 564 at 9–10 (first citing *Video Update, Inc. v. Videoland, Inc.*, 182 F.3d 659 (8th Cir. 1999); then citing *Flint Hills Res. LP v. Lovegreen Turbine Servs., Inc.*, No. 04-

cv-4669 (JRT/FLN), 2008 WL 4527816 (D. Minn. Sept. 29, 2008); and then citing *Best Buy Stores, L.P. v. Russell Constr. Co.*, No. 4:09-CV-518, 2013 WL 12250273 (S.D. Iowa Mar. 27, 2013)).  These cases do not justify reaching their results here.  In *Video Update*, the court distinguished *Seifert* on its facts.  182 F.3d at 665.  As explained, I do not think *Seifert* can be distinguished from this case, either with respect to the contents of the indemnification clauses at issue in *Seifert* and here or with respect to the indemnification-specific relief sought in each case.  In *Flint Hills Resources*, the court did not cite *Seifert* or discuss or apply its rule.  2008 WL 4527816, at *10–11.  In *Best Buy Stores*, the court essentially followed *Flint Hills Resources*, though it erroneously attributed the decision to the "Minnesota Court of Appeals."  2013 WL 12250273, at *9. The court also distinguished *Seifert* based on the indemnification clauses' contents.  *Id.* at *10.  Again, I do not think *Seifert* is distinguishable here.

The final question for ECI's motion is what fees and costs ECI should be awarded for defending against the City's liquidated-damages claim, but because ECI did not answer this question, the result is that ECI will be awarded nothing, and its motion will be denied outright.  ECI proceeded entirely on the theory that it could recover fees and costs incurred in establishing its right to indemnification from Bradshaw in this case.  *See* ECF No. 553 at 9–17.  This was an all-or-nothing position.  ECI did not request an alternative, lesser amount.  It identified no specific fees or costs it incurred separately defending against the City's liquidated-damages claim.  Without that evidence, it would be inappropriate to award ECI fees or costs.  *See Fox v. Vice*, 563 U.S. 826, 838 (2011) ("The fee applicant (whether a plaintiff or a defendant) must, of course, submit

appropriate documentation to meet 'the burden of establishing entitlement to an award.'"

(quoting *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983))).

II

Several background facts set the table for the analysis of Bradshaw's motion for attorneys' fees incurred in prosecuting its statutory prompt-payment claim.[2]  I determined that Bradshaw was entitled to $102,674.47 on its prompt-payment claim, plus interest and attorneys' fees arising from this amount.  *Eng'g & Constr. Innovations*, 2024 WL 5040395, at *57.  The prompt-payment statute under which Bradshaw pursued this claim includes a fee-shifting provision.  *See* Minn. Stat. § 337.10, subdiv. 3 ("A party requesting payment who prevails in a civil action to collect interest penalties from a party responsible for payment must be awarded its costs and disbursements, including attorney fees incurred in bringing the action.").  Bradshaw seeks a total combined fee award of $14,210.95 for prompt-payment-claim-related work performed by the two firms that represented it, Fabyanske, Westra, Hart & Thomson, P.A., and Roetzel & Andress, LPA.  ECF No. 545 at 8.  Bradshaw's counsel filed materials supporting their hourly rates.  *See* ECF No. 546 ¶¶ 18–21; ECF No. 547-1.  Bradshaw's counsel also filed records showing the amount of time they claim to have billed to the prompt-payment claim.  *See* ECF No. 546 ¶¶ 8–16; ECF No. 546-1; ECF No. 547 ¶¶ 2–6.

The time records submitted by the Fabyanske firm fall into three categories: (1) In the first category are entries showing work "specifically related to responding to ECI's

---

[2]     Bradshaw does not seek costs incurred in prosecuting the claim.  *See generally* ECF No. 545.

15

post-trial motion seeking judgment on the" prompt-payment claim. ECF No. 546 ¶ 12. Bradshaw seeks the entire amount of fees for these entries, or $1,848. *See id.*; ECF No. 546-1 at 7–8 (sum of blue highlighted entries). (2) In the second category are entries showing work that was split roughly evenly between Bradshaw's prompt-payment and bond claims, "but which do not specifically distinguish whether time was directly related to one issue or the other." ECF No. 546 ¶ 11. "Because the two issues were equally complex and required approximately the same amount of time, Bradshaw is requesting 50% of the amounts billed to Bradshaw for these entries." *Id.* This category totals $2,964.75. *See id.*; ECF No. 546-1 at 7–8 (sum of yellow highlighted entries). (3) In the third category are entries that included work "actually performed" that was "necessary for the proper representation of Bradshaw in pursuing" the prompt-payment claim. ECF No. 546 ¶ 9. Bradshaw's counsel acknowledged that "only a portion" of these entries relates to the prompt-payment claim. *Id.* Though counsel was not able to identify what precise portion of each entry relates to the prompt-payment claim, counsel reduced the amounts in this category significantly by applying a 0.026 multiplier. *Id.* ¶ 10. This multiplier represents "the total amount awarded" on the prompt-payment claim "as a percentage of Bradshaw's claimed damages as presented by its expert Joseph Egan ($102,674.47/$3,920,647 = .026)." *Id.* This category totals $5,398.20. *See id.*; ECF No. 546-1 at 2–9 (sum of non-highlighted entries). The Fabyanske firm does not seek to recover for time spent preparing its attorneys' fees motion. *See generally* ECF No. 546.

The time records submitted by the Roetzel firm fall into three categories. (1) The first category consists of entries specifically devoted to the prompt-payment issue. ECF

No. 547 ¶ 2(a)–(f).  This category totals $640.  *See id.* ¶¶ 2–3, 7.  (2) In the second category are counsel's estimates of time spent on the prompt-payment claim in specific litigation contexts (hearings, depositions, and trial), but for which there are no specific supporting entries.  *See id.* ¶¶ 3–5.  As counsel explained in a declaration, his "time charges do not separate out this unique issue from the broader time charges" in most instances.  *Id.* ¶ 3.  This category totals $3,200.  *See id.* ¶¶ 3–5.  (3) In the third category is a fraction of one hour (0.4) counsel spent preparing his fee-supporting declaration, or $160.  *Id.* ¶¶ 6–7.

Begin with what ECI does not dispute.  ECI concedes the reasonableness of the requested hourly rates for all Bradshaw counsel.  ECF No. 559 at 1.  Indeed, ECI acknowledged that the rates charged by Bradshaw's counsel "are in line with (and perhaps lower than) the prevailing standard rates charged for complex construction cases in the Twin Cities legal market."  *Id.* at 3.  ECI does not challenge the rate charged by a paralegal with the Fabyanske firm.  *See generally id.*  And ECI acknowledges the reasonableness of the fees described in the first and second categories of Fabyanske's materials, *id.* at 4–5, and in the first and third categories of the Roetzel firm's declaration, *id.* at 8.  The disputes over Bradshaw's requested fees are thus comparatively narrow. We are left with a challenge to just the third category in the Fabyanske materials and the second category in the Roetzel declaration.  These categories share a dispute-prompting characteristic: they attempt to account for time that Bradshaw's lawyers have testified they spent on the prompt-payment claim as part of broader case tasks but that was not specifically documented as related to the prompt-payment claim in their time records.

17

The issue is whether the information counsel have provided, and the methods they employed to reduce the time charged in these categories, reasonably support Bradshaw's claim for attorneys' fees in these categories.

The general rules governing this question are settled. "To calculate attorney's fees, courts typically begin by using the lodestar method, which multiplies the number of hours reasonably expended by reasonable hourly rates." *Bryant v. Jeffrey Sand Co.*, 919 F.3d 520, 529 (8th Cir. 2019). The party seeking fees has the burden of establishing that the fees sought are reasonable and should submit evidence supporting the hours worked. *Hensley*, 461 U.S. at 433–34, 437. "The applicant should exercise 'billing judgment' with respect to hours worked, and should maintain billing time records in a manner that will enable a reviewing court to identify distinct claims." *Id.* at 437 (citation removed). At the same time, however, trial-court judges need not "become green-eyeshade accountants. The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection. So trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time." *Fox*, 563 U.S. at 838.

The $5,398.20 worth of fees Bradshaw seeks in the third category of the Fabyanske materials is a reasonable amount. Though the time entries in this category do not mention the prompt-payment claim, *see* ECF No. 546-1, each time entry describes work on larger tasks, it makes complete sense that work on the prompt-payment claim would have occurred as part of these larger tasks, and counsel testified that the work described in each entry was necessary to the prompt-payment claim's prosecution, ECF

No. 546 ¶ 9. The method counsel followed to reduce the fees sought for these entries—applying a 0.026 multiplier to account for the amount awarded on the prompt-payment claim as a percentage of Bradshaw's total claimed damages—finds support in cases. *See Hensley*, 461 U.S. at 434 (recognizing that a fee award should account for the extent of a claimant's success); *Burks v. Siemens Energy & Automation, Inc.*, 215 F.3d 880, 883 (8th Cir. 2000) (affirming 25% reduction in part because party achieved marginal success in the suit); *Carroll v. Wolpoff & Abramson*, 53 F.3d 626, 629–30 (4th Cir. 1995) (affirming reduction to roughly 5% of fees requested because damages award was 5% of damages sought); *Kennedy v. Heritage of Edina, Inc.*, No. 13-cv-71 (DSD/HB), 2015 WL 3831204, at *3 (D. Minn. June 22, 2015) (considering "the difference between the amount recovered and the damages sought" in awarding fees); *United States v. Bayer Corp.*, No. 08-cv-5758 (MJD/ECW), 2024 WL 1421081, at *15 (D. Minn. Jan. 25, 2024) ("Although a fee award need not be proportional to the damage award, . . . it is a relevant factor, among others, in the analysis.").

ECI agrees that Bradshaw should recover attorneys' fees in the third Fabyanske category, but in a much smaller amount—$1,326.71 instead of the requested $5,398.20. ECF No. 559 at 7. ECI begins by faulting Fabyanske's third-category time records because they do not alone enable one to "objectively determine how many hours Fabyanske devoted to Bradshaw's prompt-payment claim." *Id.* at 6. Fair enough, but the same could be said of the time records generated by ECI's counsel. *See, e.g.*, ECF No. 555-1 at 94–95. Like Fabyanske's third-category time records, the time records maintained by ECI's counsel do not record trial-time devoted specifically to the

prompt-payment claim but describe trial tasks more generally or by witnesses, not claims. *See id.* In view of ECI's billing records, it is difficult to take this criticism seriously. ECI next argues that, instead of reducing Fabyanske's third-category fees by a percentage intended to reflect Bradshaw's degree of success on the prompt-payment claim in comparison to its total damages request, the fees in this category should be reduced by a percentage representing the number of trial-transcript pages that mention the prompt-payment claim in comparison with the total number of transcript pages. ECF No. 559 at 6–7. This is not persuasive. ECI characterizes Bradshaw's approach as an "indirect, backdoor method," *id.* at 5, but ECI identifies no features of its transcript-pages approach that make it an objectively more accurate measure than Bradshaw's percentage-of-recovery approach. And though ECI claimed it "has not found any support" for Bradshaw's method, *id.* at 5, it was not difficult to find cases doing just that, *see Carroll*, 53 F.3d at 629–30. By contrast, ECI cites no case adopting its approach. The fees Bradshaw requests in Fabyanske's third category will not be reduced.

The $3,200 worth of requested fees that fall in the second category of the Roetzel firm's declaration are problematic. In contrast to the Fabyanske materials, no time entries or billing records were submitted to support this category. *See generally* ECF No. 547. Counsel acknowledged that the fees sought in this category are the product of "conten[tions]" and estimates. *See id.* ¶¶ 3–5. Though it is only reasonable to think that counsel spent time on Bradshaw's prompt-payment claim as part of the larger activities described in this category—*e.g.*, drafting proposed findings and conclusions, taking and defending depositions, and participating in trial—no meaningful explanation is provided

to support the time estimates counsel provides. *See generally id.* These problems might reasonably prompt the outright denial of Bradshaw's claim to fees in this category. ECI argues that the lack of documentation associated with this category warrants a 50% reduction, and I agree this is a reasonable approach. The question isn't whether counsel spent time on the prompt-payment claim as part of these broader proceedings. The question is how much. ECI's proposed 50% reduction reasonably balances the lack of documentation supporting this category with the recognition that the category includes work on the prompt-payment claim. The fees awarded in this category will be reduced by 50%, or $1,600.

Additional considerations deserve brief mention. (1) Accounting for the $1,600 reduction described in the preceding paragraph, Bradshaw will be awarded fees in the amount of $12,610.95. This figure represents a reasonable percentage—roughly 12%—of the amount Bradshaw recovered on its prompt-payment claim. (2) ECI acknowledged in its opposition brief that the larger figure Bradshaw requested—$14,210.95—was "reasonable on its face." ECF No. 559 at 2. It follows that the slightly lower figure awarded here is too. (3) Bradshaw did not seek any costs and did not seek attorneys' fees for the time Fabyanske spent preparing this motion. It could have. (4) I have more-than-usual firsthand experience with this case, having presided over pretrial proceedings and seven days of trial, and having issued somewhat lengthy findings and conclusions. Based on my experience with this case and my broader experience in the legal community, I find that this amount represents a reasonable award.

## ORDER

Therefore, based on the foregoing, and on all the files, records, and proceedings herein, **IT IS ORDERED THAT**:

1.    Plaintiff Engineering & Construction Innovations, Inc.'s Motion for Attorney's Fees, Expert Fees, and Costs [ECF No. 551] is **DENIED**.

2.    Defendant and Counter Claimant Bradshaw Construction Corporation's Motion for Attorney's Fees [ECF No. 543] is **GRANTED IN PART**.  Bradshaw shall recover from ECI attorneys' fees in the amount of $12,610.95.

3.    The Clerk of Court shall enter judgment on the Findings of Fact and Conclusions of Law [ECF No. 537].

### LET JUDGMENT BE ENTERED ACCORDINGLY.


Dated: June 30, 2025                    s/ Eric C. Tostrud
                                        Eric C. Tostrud
                                        United States District Court